IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Candi Catoe Yarborough, | ) | C/A NO. 3:05-3511-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION and ORDER** |
| v. | ) | |
| | ) | |
| Officer Chris Smith and | ) | |
| Officer Chris Radcliff, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Plaintiff's complaint alleging violations of her Fourth Amendment rights and various state law causes of action. Defendants have moved for summary judgment, and Plaintiff has responded in opposition. Defendants' motion is **granted in part and denied in part** for the reasons outlined below.

**State Law Causes of Action**

Defendants contend Plaintiff's state law causes of action are barred because Plaintiff has failed to name the proper party, and that even if Plaintiff had named the proper defendant, these state law claims are barred by the applicable statute of limitations.[1]

In her complaint, Plaintiff alleges Defendants were acting within the scope of their official duties when they performed the actions of which Plaintiff complains. *See* Complaint at 2 (Dkt. #1, filed Dec. 16, 2005). "Notwithstanding any provision of law, this chapter, the 'South Carolina Tort Claims Act', is the exclusive and sole remedy for any tort committed by an employee of a governmental entity while acting within the scope of the employee's official duty." S.C.Code Ann.

---

[1]Plaintiff contends that her state law claims include battery, false arrest, and malicious prosecution.

§ 15-78-200. The South Carolina Tort Claims Act contains a two year statute of limitations period. S.C. Code Ann. § 15-78-110. This incident occurred July 3, 2003. Plaintiff's Complaint was filed December 16, 2005. Therefore, Plaintiff's state law claims are barred by the applicable statute of limitations. *See Flateau v. Harrelson*, 584 S.E.2d 413, 418-19 (S.C. Ct. App. 2003).

**Federal Causes of Action**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party (here, the Plaintiff) must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985).

Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

In deciding a summary judgment motion, the court must look beyond the pleadings and determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. An issue of fact concerns "material" facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

"*[A]ll* claims that law enforcement officials have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Conner*, 490 U.S.

386, 395 (1989).² *See also Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir.1997) (en banc) (the Fourth Amendment "governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person."). The Fourth Amendment test is "an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. The test of reasonableness is "not capable of precise definition or mechanical application." *Id*. at 396.

Plaintiff contends Defendants' actions amounted to an unreasonable search of her residence, and that Smith's actions constituted the use of excessive force against her, all in violation of the Fourth Amendment. Defendants have moved for summary judgment on Plaintiff's federal claims based upon qualified immunity. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. Thus, determining whether an official is entitled to qualified immunity requires that the court make a two-step inquiry "in proper sequence." *Parrish v. Cleveland*, 372 F.3d 294, 301-02 (4th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). As a threshold matter, the court must determine whether, taken in the light most favorable to the plaintiff, the facts alleged show that the official's

---

²The Fourth Circuit has rejected any concept of a continuing seizure rule, noting that "the Fourth Amendment . . . applies to the initial decision to detain an accused, not to the conditions of confinement after that decision has been made." *Riley v. Dorton*, 115 F.3d 1159, 1163 (4th Cir. 1997) (en banc) (internal citations and punctuation omitted). Once the single act of detaining an individual has been accomplished, the Fourth Amendment ceases to apply. *Id*. *See also Robles v. Prince George's County, Maryland*, 302 F.3d 262, 268 (4th Cir. 2002).

4

conduct violated a constitutional right. *Id*. If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail. *Id*. If the facts do establish such a violation, however, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. *Id*. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Id*. "If the right was not clearly established in the 'specific context of the case'–that is, if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted'–then the law affords immunity from suit." *Id*. (quoting *Saucier*, *supra*, 533 U.S. at 201). In determining whether a right was clearly established at the time of the claimed violation, this court looks at decisions of the Supreme Court, the Fourth Circuit Court of Appeals, and the highest court of the state in which the case arose. *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004).

If the material facts were undisputed, this court would apply clearly established law to determine whether Defendants are entitled to qualified immunity. However, "while the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (quoting *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

The facts, construed in the light most favorable to Plaintiff, are that on July 3, 2003, Defendants Chris Smith (Smith) and Chris Radcliff (Radcliff) were officers with the City of Camden Police Department. On that date, Radcliff was dispatched to Plaintiff's residence in response to a

request for assistance relating to an alleged domestic violence incident. Upon arrival, Radcliff encountered the purported victim outside the residence. Radcliff interviewed the alleged victim and ascertained that she had several "scratches on her person . . . ." Aff. of Chris Radcliff (hereinafter "Radcliff Aff.") at 2, ¶ 13 (Dkt. #18-4, filed Nov. 17, 2006). Radcliff then called for back-up assistance, proceeded to the residence, and "knocked on the side of the house in an attempt to get Chris Catoe [the alleged perpetrator] to come outside . . . ." *Id.* Plaintiff came to the door, and Radcliff inquired of her as to the whereabouts of Chris Catoe (Catoe), the alleged perpetrator. Radcliff avers that Plaintiff told him that he (Radcliff) could come into the residence to speak to Catoe. Plaintiff avers that she told Radcliff to wait outside and she would check to "see if [Catoe] was in the house." Aff. of Plaintiff at 1 (Dkt. #19-2, filed Nov. 28, 2006).[3]

Smith arrived at the scene and, after being briefed by Radcliff, the officers proceeded into the residence.[4] Meanwhile, Plaintiff had apparently telephoned the Kershaw County Sheriff's Department and requested that a sheriff's deputy be dispatched to her residence.[5] According to Plaintiff, she then proceeded to return to the door to inform Radcliff that she had called the Sheriff's Department. Plaintiff avers that she encountered the officers inside her residence, and that

---

[3] Radcliff's version of this initial encounter differs. Radcliff avers that Plaintif told him that Catoe "would not come outside, but that I could come in and speak with him." Radcliff Aff. at 3, ¶ 19. Radcliff avers that he decided to wait until another officer arrived before proceeding into the residence.

[4] Radcliff avers that as they entered the residence, he announced their presence by stating "police department." Radcliff Aff. at 3, ¶ 24.

[5] It is not clear from the record which of these two law enforcement agencies – the City of Camden Police Department or the Kershaw County Sheriff's Department – had jurisdiction in this circumstance. Plaintiff makes no argument that Defendants did not have jurisdiction in this situation; therefore, this court assumes, without deciding, that these city law enforcement officers had the appropriate jurisdictional authority.

> Radcliff was leaning against the washing machine with his gun drawn pointing at me. Officer Smith was standing in front of Radcliff, holding a long black flashlight . . . . Officer Smith then asked me where was my son Chris Catoe. I responded by telling the Officers to hold on that there was another Sheriff [sic] Deputy on the way. Officer Smith[ ] then struck [ ] me across the left arm about the wrist area with the flashlight, then pepper sprayed me and then kicked my feet out from under me.

Aff. of Plaintiff at 1-2 (Dkt. #19-2, filed Nov. 28, 2006).

Smith avers that because Plaintiff refused to allow them to proceed into the residence to speak to Catoe, Radcliff informed Plaintiff that she was under arrest for interfering with a municipal officer, and that at that point, Plaintiff became combative and "violently resistive. . . ." Aff. of Chris Smith (hereinafter "Smith Aff.") at 2, ¶ 17 (Dkt. #18-5, filed Nov. 17, 2006). Radcliff was not thereafter involved in the physical restraint of Plaintiff.

Plaintiff was subsequently subdued, placed in restraints, taken to a detention facility, and charged with Interfering with a Municipal Officer and Resisting Arrest. *See* Incident Report at 2 (Dkt. #18-5, filed Nov. 17, 2006).

Construing the facts in the light most favorable to Plaintiff, Radcliff had his weapon drawn in Plaintiff's home, and Smith allegedly assaulted Plaintiff in the course of effecting her arrest. Therefore, Plaintiff was seized within the meaning of the Fourth Amendment.

Defendants had probable cause to believe the crime of domestic violence had been freshly committed, and that the victim had suffered physical injuries. Therefore, they were vested with South Carolina statutory authority to effect the arrest of *Catoe*, as South Carolina Code § 16-25-70(B) requires the arrest of perpetrators in these circumstances. The statute gives the officers authority to enter a residence and effect the arrest, with or without a warrant, "where the officer has probable cause to believe that the action is reasonably necessary to prevent physical harm or danger

to a family or household member." S.C. Code Ann. § 16-25-70(C).  Therefore it appears that Defendants may have had authority to enter Plaintiff's residence without her permission to effect Catoe's arrest.[6]  Certainly it was objectively reasonable for Defendants to enter the residence.

At this point, however, the facts diverge.  Plaintiff avers she encountered Radcliff in her residence with his weapon drawn, and that Smith then, without provocation, assaulted her with a flashlight, pepper-sprayed her, and "kicked [her] feet out from under [her]."  Aff. of Plaintiff at 2 (Dkt. #19-2, filed Nov. 28, 2006).  Plaintiff contends these actions occurred prior to her being placed under arrest.

Radcliff avers that he drew his weapon *after* Plaintiff had been informed that she was under arrest, and that he did so in response to the sudden appearance of Catoe.  *See* Radcliff Aff. at 4, ¶ 31.  Smith avers that he pepper-sprayed Plaintiff *after* Radcliff told her she was under arrest "in an attempt to control the Plaintiff without the need for physical force . . . ."  Smith Aff. at 3, ¶ 22.  Smith makes no mention of striking Plaintiff with his flashlight.

Construing the facts in the light most favorable to Plaintiff, this court finds that a reasonable officer could feel it necessary to have his weapon drawn at the time he encountered Plaintiff.  Even if Plaintiff encountered Radcliff with his weapon drawn (as she claims), the circumstances which faced Officers Radcliff and Smith were such that Radcliff could have reasonably believed it necessary to enter the residence with his weapon drawn or to draw his weapon upon hearing the approach of an unknown individual.  The officers reasonably believed the crime of domestic violence had freshly occurred, and they were entering a residence into which they had not previously ventured.

---

[6]Although there are disputed facts relating to the officers' entry into the home, and whether the officers reasonably believed they had permission to enter, Plaintiff does not argue that her son did not live at her residence.

Therefore, this court finds Officer Radcliff is entitled to qualified immunity and all claims against him are dismissed with prejudice.

As to Officer Smith, however, a factual dispute exists as to whether his alleged actions occurred prior to or as a consequence of Plaintiff's arrest. Viewing the facts in the light most favorable to Plaintiff, when Officer Radcliff pointed a weapon at Plaintiff in her own home, she was seized within the meaning of the Fourth Amendment. If Smith's alleged actions occurred prior to Plaintiff's arrest, they would constitute an unreasonable use of force, and a reasonable officer would have known that at the time of this incident. *See Graham*, 490 U.S. at 394 (Fourth Amendment "guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."). Therefore, this court **denies** Defendant Smith's motion for summary judgment on grounds of qualified immunity.[7]

Summary judgment is therefore **granted** to Defendants on Plaintiff's state law causes of action and **granted** as to all claims against Officer Radcliff. Summary judgment is **denied** as to the federal claims against Officer Smith. This matter shall be placed on the trial roster for the term of court beginning February 22, 2007.

---

[7]Defendants argue Plaintiff fails to establish that her injuries were more than *de minimus*, and that Plaintiff accordingly fails to establish injury sufficient to satisfy a constitutional threshold. However, the requirement of more than *de minimus* injury relates to the separate analysis applied to pretrial detainees under the Due Process Clause of the Fourteenth Amendment. As noted above, Plaintiff claims that Smith's actions occurred *prior to* her arrest. Therefore, because the analysis proceeds under the Fourth Amendment, the only determination for the court to make is whether Smith's actions were reasonable.

**IT IS SO ORDERED.**

                                                s/ Cameron McGowan Currie
                                                CAMERON McGOWAN CURRIE
                                                UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
January 3, 2007

C:\temp\notesB0AA3C\05-3511 Yarborough v. Smith e denying summary judgment.wpd